Jonathan Shub (SBN 237708)
E-mail: jshub@shublawyers.com
Kevin Laukaitis*
E-mail: klaukaitis@shublawyers.com
**SHUB LAW FIRM LLC**
134 Kings Highway E, 2nd Floor
Haddonfield, NJ 08033
Telephone: 856-772-7200
Facsimile: 856-210-9088

*Attorneys for Plaintiff and the Class*

[Additional counsel listed on signature page]

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRENE BURGESS, individually and on behalf of all others similarly situated,<br><br>                                          Plaintiff,<br><br>        v.<br><br>PAPARAZZI, LLC, a Utah limited liability company,<br><br>                                          Defendant. | Case No.: 2:22-at-557<br><br>**CLASS ACTION COMPLAINT FOR**<br>1. **NEGLIGENT MISREPRESENTATION;**<br>2. **FRAUDULENT MISREPRESENTATION;**<br>3. **QUASICONTRACT;**<br>4. **CALIFORNIA CONSUMER LEGAL REMEDIES ACT;**<br>5. **CALIFORNIA FALSE ADVERTISING LAW; AND**<br>6. **CALIFORNIA UNFAIR COMPETITION LAW** |

## JURY TRIAL DEMANDED

Plaintiff Irene Burgess ("Plaintiff") on behalf of herself and all others similarly situated (the "Class" as defined below) brings this Class Action Complaint against Paparazzi, LLC ("Defendant"). Plaintiff bases the allegations below on personal knowledge as to matters related to and known to her. As to all other matters, Plaintiff bases her allegations on information and belief and through investigation of their counsel. Plaintiff believes substantial evidentiary support exists for the allegations below.

## SUBJECT MATTER JURISDICTION

1.     This Court has subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act of 2005, 28 U.S.C.§ 1332(d)(2), because: (i) there are 100 or more putative Class Members; (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs;

and (iii) there is minimal diversity because at least Plaintiff and Defendant are citizens of different states. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

## THE PARTIES

2.      Plaintiff is a resident and citizen of California residing in Willows, California (Glenn County).

3.      Defendant Paparazzi, LLC ("Defendant") is a limited liability company organized and existing under the laws of the State of Utah, whose principal place of business is 4771 Desert Color Parkway, St. George, UT 84790.

4.      Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

## PERSONAL JURISDICTION AND VENUE

5.      This Court has personal jurisdiction over Defendant in this matter because Defendant conducts substantial business in this District, has sufficient minimum contacts with this District, and otherwise purposely avails itself of the markets in this District, through the promotion, sale, and marketing of its products in this District. Defendant has been afforded due process because it has, at all times relevant to this matter, individually or through its agents, subsidiaries, officers or representatives, done one or more of the following: operated, conducted, engaged in and carried on a business venture in this state; maintained an office or agency in this state; marketed, advertised, distributed, or sold products in this state; committed a statutory violation related to the allegations of this Complaint in this State; and caused injuries to Plaintiff and putative Class Members, in this state.

6.      Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this District because a substantial part of the events giving rise to the claims asserted occurred in this District and Plaintiff resides in this District. A substantial part of the acts and omissions giving rise to this action occurred in the State of California.

CLASS ACTION COMPLAINT

**INTRODUCTION**

7.      Defendant is a multi-level marketing business that sells jewelry and other accessories wholesale in bulk to consultants, who then sell the jewelry and other accessories to consumers.

8.      Despite earlier representations and express warranties stating that Defendant's products are "lead-free and nickel-free," Defendant designed, sourced, and sold jewelry that allegedly contained detectable levels of lead and nickel, among other heavy metals (the "Products").[1]

9.      Between November 20, 2021, and January 9, 2022, Defendant removed the "lead-free and nickel-free" representations from its website.[2]

10.     Nickel allergy affects approximately 10% of the United States population, often causing itchy, inflamed rashes, hives, and sometimes headaches, vomiting, and fatigue.[3]

11.     Lead used in jewelry makes the product heavier, more stable, brightens the paint, or softens the plastic. However, lead is a toxic metal that has been demonstrated to lead to severe long-term health problems including, *inter alia*, learning disabilities, anemia, and organ failure.

12.     Unbeknownst to Plaintiff and members of the proposed Classes, and contrary to the representations on defendant's website, the Products contain lead and nickel, which, if disclosed to Plaintiff and members of the proposed Classes prior to purchase, would have resulted in Plaintiff and members of the proposed Classes not purchasing or using the Products.[4]

13.     As a result, the Products' labeling is deceptive and misleading. Plaintiff and the members of the proposed Classes, as defined below, bring related claims under both the common law and relevant state and federal statutes.

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

**A.      Defendant Marketed and Sold Its Jewelry as "Lead-free and Nickel-free"**

14.     Defendant is a company that designs, sources, and sells jewelry in the United States via

---

[1] https://truthinadvertising.org/articles/paparazzi-accessories-lead-free-and-nickel-free-jewelry/ (last accessed April 28, 2022).
[2] *Id.*
[3] https://my.clevelandclinic.org/health/diseases/17842-nickel-allergy (last accessed April 28, 2022).
[4] https://truthinadvertising.org/articles/paparazzi-accessories-lead-free-and-nickel-free-jewelry/ (last accessed April 28, 2022).
https://jewelryblingthing.com/blogs/news/paparazzi-jewelry-is-nickel-and-lead-free (last accessed April 28, 2022).

their multi-level marketing distribution strategy. The Products are produced in China.

15.     Defendant holds itself out to the public as a distributor of safe, fashion-forward, and affordable jewelry. As part of its previous marketing and sales, Defendant made representations and express warranties about the quality of its jewelry as "lead-free and nickel-free."

16.     Defendant promoted the Products as "lead-free and nickel-free" jewelry on its website as recently as November 9, 2021.[5] Pictured below is a screen shot of Defendant's website with such representations regarding its Products.



17.     On or after November 9, 2021, Defendant removed the lead-free and nickel-free claims from its website. Pictured below is the site on January 9, 2022.[6]

---

[5] https://web.archive.org/web/20211006014220/https://paparazziaccessories.com/about/
[6] https://web.archive.org/web/20220109184940/https://paparazziaccessories.com/about/

4

**CLASS ACTION COMPLAINT**

**B.    The Products Actually Contain Heavy Metals and Nickel**

18.    Unbeknownst to Plaintiff and members of the proposed Classes, and contrary to the representations on defendant's website, the Products contain toxic heavy metals such as antimony, arsenic, cadmium, and lead, as well as nickel,[7] which, if disclosed to Plaintiff and members of the proposed Classes prior to purchase, would have caused Plaintiff and members of the proposed Classes not to purchase or use the Products.[8]

19.    Lead is a carcinogen and developmental toxin known to cause severe health problems to consumers.

20.    For centuries, exposure to lead has been known to pose health hazards. According to the Agency for Toxic Substances and Disease Registry 2007, certain levels of exposure can result in delirium, seizures, stupor, coma, or even death.

21.    A substantial body of recent epidemiologic and toxicologic research demonstrates that

---

[7] See Paparazzi Jewelry Tests Positive for Lead and Nickel, https://medium.com/@murialbezanson/paparazzi-jewelry-tests-positive-for-lead-and-nickel-877c2254a47d (last accessed Apr. 22, 2022); Paparazzi Accessories Child's Ring, https://tamararubin.com/2022/02/paparazzi-accessories-childs-ring-pink-white-flower-with-center-gem-252800-ppm-lead-98200-ppm-cadmium-4565-ppm-antimony-40500-ppm-nickel-too/ (last accessed Apr. 22, 2022).
[8] https://truthinadvertising.org/articles/paparazzi-accessories-lead-free-and-nickel-free-jewelry/ (last accessed Apr. 22, 2022).

**CLASS ACTION COMPLAINT**

multiple health effects can occur at low to moderate blood lead levels previously without recognized harm. Health effects of chronic low-level exposure in adults include cognitive decline, hypertension and other cardiovascular effects, decrements in renal function, and adverse reproductive outcome.

22.     Exposure to heavy metals causes permanent reduction in IQ, diminished future economic productivity, and increased risk of future criminal and antisocial behavior in children. Toxic heavy metals endanger infant neurological development and long-term brain function.[9]

23.     Some studies have shown that lead can be absorbed through the skin.[10]

24.     The Agency for Toxic Substances and Disease Registry states that there may be no threshold for lead with regards to developmental impact on children. "In other words, there are no safe limits for [lead]."[11]

25.     Moreover, nickel is a known allergen that can cause reactions in wearers such as itchy rashes and blisters at the site of contact with skin. Reactions can begin within hours or days of the exposure to nickel and may last as long as two to four weeks.[12]

26.     Studies have shown that roughly 12 to 17% of women and 1 to 3% of men are allergic to nickel.[13]

27.     In a statement attributed to Defendant's founders and corporate offices dated December 22, 2021, Defendant Dadmitted its jewelry "may contain trace amounts of lead and nickel."[14]

**C.     Plaintiff Purchased the Products in Reliance of Defendant's False Representations**

28.     Between September 2018 and May 2019, Plaintiff regularly purchased some Products for her personal use. Plaintiff purchased the Products because the Products were advertised as being

---

[9] https://pubmed.ncbi.nlm.nih.gov/30941546/#:~:text=The%20implications%20of%20heavy%20metals,problems%2C%20cancer%20and%20cardiovascular%20diseases (last accessed Apr. 22, 2022).
[10] *See* https://www.cdc.gov/niosh/topics/lead/exposure.html, (last accessed April 22, 2022).
[11] G. Schwalfenberg, I. Rodushkinb, S.J. Genuis, "Heavy metal contamination of prenatal vitamins," Toxicology Reports 5 at 392 (2018).
[12] https://www.mayoclinic.org/diseases-conditions/nickel-allergy/symptoms-causes/syc-20351529, (last accessed April 22, 2022)
[13] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6510463/ (last accessed April 22, 2022); https://nickelinstitute.org/en/science/what-do-you-need-to-know-about-nickel-allergy/ (last accessed April 22, 2022).
[14] Paparazzi Jewelry IS Nickel and Lead Free, https://jewelryblingthing.com/blogs/news/paparazzi-jewelry-is-nickel-and-lead-free (last accessed April 22, 2022).

lead-free and nickel-free. Plaintiff experienced allergic reaction including redness and itchiness where she wore the Products. Plaintiff suffered economic damages related to the purchase of the Products.

## TOLLING AND ESTOPPEL OF STATUTE OF LIMITATIONS

29.    Defendant has had actual knowledge that the marketing, packaging, and labeling of the Products was deceptive and misleading because the Products undergo regular testing for all heavy metals including lead, nickel, and cadmium.[15]

30.    Despite the fact that tests have shown the presence of heavy metals such as lead, nickel, and cadmium, Defendant continued to market the Products as being free of heavy metals and "lead-free and nickel-free."

### A.    Continuing Act Tolling

31.    Defendant continuously marketed and sold the Products to consumers. It continuously represented the Products were "lead-free and nickel-free." By continuously repeating these false representations and by failing to disclose that the Products did in fact contain nickel, lead, and other heavy metals, Defendant exposed consumers to risk of injury.

32.    Defendant's knowledge of the true inherent nature of the Products is evidenced by, among other things, statements made by consultants.[16]

33.    Thus, at all relevant times, Defendant indisputably possessed continuous knowledge of the material dangers posed by the Products and false marketing of the Products, yet it knowingly continued to aggressively market and sell the Products free of nickel and lead. Plaintiff and other Class members' claims are not time barred.

### B.    Fraudulent Concealment Tolling

34.    Defendant had a duty to disclose to Plaintiff, Class Members, and California Subclass Members the true quality and nature of the Products, that they were potentially unsafe, and actually contained nickel and lead.

35.    This duty arose, among other things, due to Defendant's overt representations that the Products did not contain nickel or lead.

[15] https://jeweleryblingthing.com/blogs/news/paparazzi-jewelry-is-nickel-and-lead-free (last accessed March 24, 2022)
[16] *Id.*

7

**CLASS ACTION COMPLAINT**

36.     Defendant has known at all relevant times of the risks that the Products contained nickel and lead. Prior to selling the Products, Defendant knew or, but for its extreme recklessness, should have known that the Products actually contained nickel and lead and thus posed a risk to consumers. These facts cannot have been unknown to Defendant in the absence of extreme recklessness.

37.     Despite its knowledge of the defective design and danger of the product when used as intended, Defendant failed to disclose and actively concealed this material information.

38.     The purpose of Defendant's active concealment of the dangers of the Products was to continue to profit from the sale of the Products and to prevent Plaintiff and other Class members from seeking redress.

39.     Plaintiff and the other Class members justifiably relied on Defendant to disclose the true nature of the Products they purchased and/or owned because the truth was not discoverable by Plaintiff and the other Class members through reasonable efforts.

40.     Any applicable statute of limitations is tolled by Defendant's knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

## C.     **Discovery Rule Tolling**

41.     Plaintiff and other Class members, through the exercise of reasonable diligence, could not have discovered Defendant's wrongdoing. Defendant was concealing and misrepresenting the true nature of the Products, including the fact that they actually contain nickel and lead.

42.     Until recently, only Defendant had knowledge of the fact that the Products pose a safety risk to consumers. Plaintiff, Class Members, and the public at-large had no reasonable way of obtaining knowledge of this important fact until certain consumers began testing the Products for themselves. Such testing is not widely available.

43.     Plaintiff and Class Members could not have reasonably discovered the true extent of Defendant's illegal conduct in connection with the ingredients of the Products until certain consumer began testing and posting articles regarding the results on widespread forums.

44.     Plaintiff and other Class members could not have reasonably discovered and could not have known of facts that would have caused a reasonable person to suspect, that Defendant knowingly

8

failed to disclose material information within its knowledge about the contents and dangers of the Products to consumers in the U.S. and elsewhere.

45.   As such, no potentially relevant statute of limitations should be applied.

**D.**   **Estoppel**

46.   Defendant was under a continuous duty to disclose to Plaintiff and other Class members the fact they knew that the Products actually contained nickel, lead, and other heavy metals.

47.   Defendant knowingly, affirmatively, and actively concealed the true nature, quality, and character of the Products from Plaintiff and other members of the Class.

48.   Thus, Defendant is estopped from relying on any statutes of limitations in defense of this action.

## CLASS ACTION ALLEGATIONS

49.   Pursuant to Rule 23(a) and (b)(3), all Plaintiff bring the action on behalf of a proposed class defined as follows:

> **NationwideClass**: All persons who purchased Products in the United States within the Relevant Time Period.

50.   In the alternative, Plaintiff brings this action on behalf of the following State Sub-Class:

> **California Subclass:** All persons residing in California who purchased Products within the Relevant Time Period.

51.   Excluded from the NationwideClass and the California Subclass are (a) Defendant, Defendant's board members, executive-level officers, and attorneys, and immediately family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes himself or herself from the Class in accordance with Court-approved procedures.

52.   Plaintiff reserves the right to alter Class definitions as she deems necessary at any time to the full extent that the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Central District of California, and applicable precedent allow.

53.   Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as individual Class

9

members would use to prove those elements in individual actions alleging the same claims.

54.    **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The size of the NationwideClass and the California Subclass are so large that joinder of all Class members is impracticable. Due to the nature of Defendant's business and the size of the recalls, Plaintiff believes there are hundreds or thousands of Class members geographically dispersed throughout the United States and hundreds or thousands of Class members in California.

55.    **Predominance of Common Questions of Law and Fact – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** There are questions of law and fact common to the Nationwide Class and the state Subclass. These questions predominate over any questions affecting only individual Class members. Common legal and factual questions include but are not limited to:

a.    whether Defendant sold Products that had detectable levels of nickel and lead;

b.    whether Defendant advertised, represented, or held itself out as producing or manufacturing Products that were safe to wear;

c.    whether Defendant expressly warranted the Products;

d.    whether Defendant purported to disclaim any express warranty;

e.    whether Defendant purported to disclaim any implied warranty;

f.    whether any limitation on warranty fails to meet its essential purpose;

g.    whether Defendant intended for Plaintiff, the Class members, and others to purchase the Products;

h.    whether Defendant intended or foresaw that Plaintiff, the Class members, and others would wear the Products;

i.    whether and in what manner Defendant was negligent in manufacturing or processing the Products;

j.    whether Defendant's negligence proximately caused loss, injury, or damages to the Class members;

k.    whether the Class members suffered direct losses or damages;

l.    whether the Class members suffered indirect losses or damages;

m.    whether the Class members are entitled to actual or other forms of damages and other

monetary relief; and

n.    whether the Class members are entitled to equitable relief, including but not limited to injunctive relief and equitable restitution.

56.    Defendant engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually and on behalf of the Class members. Similar or identical violations of law, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. Moreover, the common questions will yield common answers that will substantially advance the resolution of the case.

57.    **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the members of the Nationwide Class and the California Subclasses because Defendant injured all Class members through the uniform misconduct described herein; and Plaintiff seek the same relief as the Class members. Furthermore, there are no defenses available to Defendant that are unique to Plaintiff.

58.    **Adequacy – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is a fair and adequate representative of the Nationwide Class and the California Subclass because Plaintiff's interests do not conflict with the Class members' interests. Plaintiff will prosecute this action vigorously and are highly motivated to seek redress against Defendant. Furthermore, Plaintiff has selected competent counsel who are experienced in class action and other complex litigation. Plaintiff and her counsel are committed to prosecuting this action vigorously on behalf of the Class and have the resources to do so.

59.    **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a class action, Plaintiff and members of the Classes will continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. Accordingly, the proposed Classes satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

**CLASS ACTION COMPLAINT**

60.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and all Members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole.

61.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for reasons including but not limited to the following:

a.     The damages individual Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct;

b.     Further, it would be virtually impossible for the Class members individually to redress effectively the wrongs done to them. Even if Class members themselves could afford such individual litigation, the court system could not. Individualized litigation would unnecessarily increase the delay and expense to all parties and to the court system and presents a potential for inconsistent or contradictory rulings and judgments. By contrast, the class action device presents far fewer management difficulties, allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court;

c.     The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendant;

d.     The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications or that would substantively impair or impede their ability to protect their interests.

62.     **Notice:** Plaintiff and her counsel anticipate that notice to the proposed Class will be effectuated through recognized, Court-approved notice dissemination methods, which may include

United States mail, electronic mail, Internet postings, and/or published notice.

## CLAIMS FOR RELIEF

### COUNT I

### NEGLIGENT MISREPRESENTATION

**(On Behalf of the Nationwide Class and/or California Subclass)**

63.     Plaintiff repeats and realleges paragraphs 1 through 62 inclusive, as if fully set forth. Plaintiff brings this claim on behalf of herself, the Nationwide Class and/or the California Subclass against Defendant.

64.     As alleged herein, Defendant made material misrepresentations and omissions regarding the Products on the Products' labeling and packaging, in the Products' advertisements, and/or on Defendant's website, specifically the describing the Products as "lead-free and nickel-free."

65.     Defendant described the Products as "lead-free and nickel-free" in order to sell the Products to Plaintiff and members of the Class and Subclass and increase their profits.

66.     Plaintiff, Nationwide Class Members, and California Subclass Members purchased the Products described as "nickel-free and lead free" because they wanted products that did not contain lead or nickel.

67.     Plaintiff, Nationwide Class Members, and California Subclass Members reasonably relied upon Defendant's representations that the Products did not contain lead or nickel.

68.     Plaintiff, Nationwide Class Members, and California Subclass Members suffered economic and other losses because the Products did in fact contain lead and nickel.

69.     Had Plaintiff and the Classes known the truth about the Products, they would not have purchased the Products.

### COUNT II

### FRAUDULENT MISREPRESENTATION

**(On Behalf of the Nationwide Class and/or California Subclass)**

70.     Plaintiff repeats and realleges paragraphs 1 through 62 inclusive, as if fully set forth. Plaintiff brings this cause of action on behalf of herself, the Nationwide Class and/or the California Subclass against Defendant.

**CLASS ACTION COMPLAINT**

71.     Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

a.      WHO: Defendant made material misrepresentations and/or omissions of fact in its labeling and marketing of the Products by representing that the Products are "nickel-free and lead-free."

b.      WHAT: Defendant's conduct here was fraudulent because it has the effect of deceiving consumers into believing that the Products are "nickel-free and lead-free" products. Defendant omitted telling Plaintiff and Class Members that the Products are not "nickel-free and lead-free" products. Defendant knew or should have known this information is material to all reasonable consumers and impacts consumers' purchasing decisions. Yet, Defendant has represented that the Products are "nickel-free and lead-free" products when they are not, and has omitted from the Products' labeling the fact that there are other products available in the market that actually are free of both nickel and lead.

c.      WHEN: Defendant made material misrepresentations and/or omissions detailed herein, including that the Products are "nickel-free and lead-free" products, continuously throughout the applicable Class period(s).

d.      WHERE: Defendant's material misrepresentations and omissions, that the Products are "lead-free and nickel-free" products were located online which instantly catches the eye of all reasonable consumers, including Plaintiff, at the point of sale in every transaction.

e.      HOW: Defendant made written misrepresentations on their website that the Products were "nickel-free and lead-free" even though they contained nickel and lead. As such, Defendant's "nickel-free and lead-free" representations are false and misleading. Moreover, Defendant omitted from the Products' labeling and their online advertising and website the fact that the Products actually contained nickel and lead. And as discussed in detail throughout this Complaint, Plaintiff and Class Members read and relied on Defendant's "nickel-free and lead-free" representations before purchasing the

14

Products.

    f.    WHY: Defendant misrepresented its Products as being "nickel-free and lead-free" products and omitted from the Products' labeling the fact that there was in fact nickel and lead in the Products for the express purpose of inducing Plaintiff and Class Members to purchase the Products at a substantial price premium. As such, Defendant profited by selling the misrepresented Products to at least thousands of consumers throughout the nation.

72.    As alleged herein, Defendant knowingly made material misrepresentations and omissions regarding the Products on the Products' labeling and packaging, in the Products' advertisements, and/or on Defendant's website, specifically the describing the Products as "lead-free and nickel-free" as alleged more fully herein.

73.    Defendant made these material "lead-free and nickel-free" Representations and omissions in order to induce Plaintiff and putative Class Members to purchase the Products.

74.    Defendant knew the "lead-free and nickel-free" Representations regarding the Products were false and misleading but nevertheless made such representations through the marketing, advertising and on the Products' labeling. In reliance on these "lead-free and nickel-free" Representations, Plaintiff and putative Class Members were induced to, and did, pay monies to purchase the Products.

75.    Had Plaintiff and the Class known the truth about the Products, they would not have purchased the Products.

76.    As a proximate result of the fraudulent conduct of Defendant, Plaintiff and the putative Class paid monies to Defendant, through its regular retail sales channels, to which Defendant is not entitled, and have been damaged in an amount to be proven at trial.

## **COUNT III**

## **RESTITUTION**

### **(On Behalf of the Nationwide Class and/or California Subclass)**

77.    Plaintiff repeats and realleges paragraphs 1 through 62 inclusive, paragraphs 64 through 69 inclusive, and paragraphs 71 through 76 inclusive, as if fully set forth. Plaintiff brings this cause of

**CLASS ACTION COMPLAINT**

action on behalf of herself, and the putative Classes against Defendant.

78.     Plaintiff and putative Class Members conferred a benefit on Defendant when they purchased the Products, of which Defendant had knowledge. By its wrongful acts and omissions described herein, including selling the Products represented to be "lead-free and nickel-free" and when the Products actually contained nickel and lead, and did not otherwise perform as represented and for the particular purpose for which they were intended, Defendant was unjustly enriched at the expense of Plaintiff and putative Class Members.

79.     Plaintiff's detriment and Defendant's enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

80.     Defendant has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiff and putative Class Members under circumstances in which it would be unjust for Defendant to be permitted to retain the benefit. It would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from their wrongful conduct as described herein in connection with selling the Products.

81.     Defendant has been unjustly enriched in retaining the revenues derived from Class Members' purchases of the Products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant marketed, advertised, distributed, and sold the Products, and misrepresented the nature of the Products, misrepresented their benefits and attributes, and knowingly marketed and promoted the Products with "lead-free and nickel-free" representations, which caused injuries to Plaintiff and the Class because they would not have purchased the Products based on the same representations if the true facts concerning the Products had been known.

82.     Plaintiff and putative Class Members have been damaged as a direct and proximate result of Defendant's unjust enrichment because they would not have purchased the Products on the same terms or for the same price had they known the true nature of the Products and the misrepresentations regarding what the Products were and what they contained.

83.     Defendant either knew or should have known that payments rendered by Plaintiff and putative Class Members were given and received with the expectation that the "lead-free and nickel-free" representations made by Defendant in advertising, on Defendant's websites, and on the Products'

CLASS ACTION COMPLAINT

labels and packaging were true. It is inequitable for Defendant to retain the benefit of payments under these circumstances because the "lead-free and nickel-free" representations are not true.

84.     Plaintiff and putative Class Members are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

85.     When required, Plaintiff and Class Members are in privity with Defendant because Defendant's sale of the Products was either direct or through authorized "consultants" or salespersons acting as agents of Defendant for the purpose of selling Defendant's Products.

86.     As a direct result of Defendant's wrongful conduct, Defendant has been unjustly enriched, thus Plaintiff and putative Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for their inequitable and unlawful conduct.

## COUNT IV

## CALIFORNIA CONSUMER LEGAL REMEDIES ACT

### Cal. Civ. Code § 1750 et seq. ("CLRA")

**(On Behalf of the California Subclass)**

87.     Plaintiff repeats and realleges paragraphs 1 through 62 inclusive, paragraphs 64 through 69 inclusive, paragraphs 71 through 76 inclusive, and paragraphs 78 through 86 inclusive , as if fully set forth. Plaintiff brings this claim on behalf of the California Subclass.

88.     The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

89.     Defendant's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Products for personal, family, or household purposes by Plaintiff and California Subclass Members, and violated and continue to violate the following sections of the CLRA:

a.     § 1770, subd. (a)(5): representing that the Products have characteristics, uses, or benefits which they do not have;

b.     § 1770, subd. (a)(7): representing that Products are of a particular standard, quality, or grade if they are of another;

17

c.    § 1770, subd. (a)(9): advertising the Products with intent not to sell them as advertised; and

d.    § 1770, subd. (a)(16): representing the Products have been supplied in accordance with a previous representation when it has not.

90.    Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

91.    Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

92.    Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiff has provided a letter to Defendant concurrently with the filing of this Class Action Complaint to provide Defendant with notice of its alleged violations of the CLRA, demanding that Defendant correct such violations, and providing it with the opportunity to correct its business practices.

93.    If Defendant does not correct its business practices within the time allowed by CLRA, Plaintiff will seek leave to amend the complaint to add claims for monetary relief, including restitution and actual damages under the Consumers Legal Remedies Act.

94.    Pursuant to California Civil Code § 1780, Plaintiff seek injunctive relief, reasonable attorney fees and costs, and any other relief that the Court deems proper.

## COUNT V
## FALSE ADVERTISING UNDER THE
## CALIFORNIA FALSE ADVERTISING LAW
### (Cal. Bus. & Prof. Code § 17500 et seq.)
### (On behalf of the California Subclass)

95.    Plaintiff repeats and realleges paragraphs 1 through 62 inclusive, paragraphs 64 through 69 inclusive, paragraphs 71 through 76 inclusive, paragraphs 78 through 86 inclusive, and paragraphs 88 through 94 inclusive, as if fully set forth. Plaintiff brings this claim on behalf of the California Subclass.

96.    Defendant, Plaintiff, and California Subclass members are "persons" within the meaning of Cal. Bus. & Prof. Code § 17506.

18

97.    The California False Advertising Law ("California FAL") prohibits false advertising. Cal. Bus. & Prof. Code § 17500.

98.    In the course of its business, defendant, through its agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding the safety and contents of the Products, as detailed above.

99.    Specifically, by misrepresenting the Products as being "lead-free and nickel-free," and by failing to disclose and actively concealing that there was in fact nickel and lead in the Products, defendant engaged in untrue and misleading advertising prohibited by California Bus. & Prof. Code § 17500.

100.    Defendant made or caused to be made and disseminated throughout California advertising, marketing, and other publications containing statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to defendant, to be untrue and misleading to consumers, including Plaintiff and California Subclass members. Examples of these statements and advertisements appear in the preceding paragraphs throughout this Complaint.

101.    Defendant's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff and California Subclass members, about the true nature and quality of the Products, the quality of Defendant's brand, and the true value of the Products.

102.    Defendant's scheme and concealment of the true characteristics of the Products were material to Plaintiff and California Subclass members, as Defendant intended. Had they known the truth, Plaintiff and California Subclass members would not have purchased the Products or would have paid significantly less for them.

103.    Plaintiff and California Subclass members relied on defendant and had no way of discerning that those representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiff and California Subclass members did not, and

**CLASS ACTION COMPLAINT**

1   could not, unravel defendant's deception on their own.

2   104.   Defendant had an ongoing duty to Plaintiff and California Subclass members to refrain

3   from unfair or deceptive practices under the California FAL in the course of its business. Specifically,

4   defendant owed Plaintiff and California Subclass members a duty to disclose all the material facts

5   concerning the Booster Seats because they possessed exclusive knowledge, they intentionally

6   concealed the true characteristics of the Products from Plaintiff and California Subclass members,

7   and/or they made misrepresentations that were rendered misleading because they were contradicted by

8   withheld facts.

9   105.   Plaintiff and California Subclass members suffered ascertainable loss and actual

10  damages as a direct and proximate result of defendant's concealment, misrepresentations, and/or

11  failure to disclose material information.

12  106.   Defendant's violations present a continuing risk to Plaintiff and California Subclass

13  members, as well as to the general public. Defendant's unlawful acts and practices complained of

14  herein affect the public interest.

15  107.   Plaintiff and California Subclass members seek an order enjoining defendant's false

16  advertising, any such orders or judgments as may be necessary to restore to Plaintiff and California

17  Subclass members any money acquired by unfair competition, including restitution and/or

18  restitutionary disgorgement, and any other just and proper relief available under the false advertising

19  provisions of the California FAL.

20                          **COUNT VI**

21        **UNLAWFUL, UNFAIR, OR FRAUDULENT BUSINESS PRACTICES**

22          **UNDER THE CALIFORNIA UNFAIR COMPETITION LAW**

23                **(Cal. Bus. & Prof. Code § 17200 et seq.)**

24                **(On behalf of the California Subclass)**

25  108.   Plaintiff repeats and realleges paragraphs 1 through 62 inclusive, paragraphs 64 through

26  69 inclusive, paragraphs 71 through 76 inclusive, paragraphs 78 through 86 inclusive, paragraphs 88

27  through 94 inclusive, and paragraphs 97 through 107 inclusive, as if fully set forth. Plaintiff brings this

28  claim on behalf of the California Subclass.

**CLASS ACTION COMPLAINT**

109.    California's Unfair Competition Law ("UCL"), Business and Professions Code § 17200, prohibits any "unlawful, unfair, or fraudulent business act or practices."

110.    As detailed in the allegations above, Defendant knowingly and intentionally designed, developed, manufactured, marketed and sold the Products, while misrepresenting and fraudulently concealing the contents of the Products from Plaintiff and California Subclass members alike. In doing so, Defendant has engaged in at least the following unlawful, fraudulent, and unfair business acts and practices in violation of the UCL:

    a.    Knowingly and intentionally concealing from Plaintiff and California Subclass members that the Products actually contained nickel and lead while obtaining money from Plaintiff and California Subclass members; and

    b.    Marketing the Products as being "lead-free and nickel-free."

111.    Defendant's misrepresentations, omissions, and concealment of the true characteristics the Products were material to Plaintiff and California Subclass members, and Defendant misrepresented, concealed, or failed to disclose the truth with the intention that consumers would rely on the misrepresentations, concealment, and omissions. Had they known the truth, Plaintiff and California Subclass members who purchased the Products would not have purchased them at all or would have paid significantly less for them.

112.    Plaintiff and California Subclass members suffered ascertainable loss as a direct and proximate result of Defendant's misrepresentations, concealment of and failure to disclose material information, and violation of the laws alleged above.

113.    Pursuant to Cal. Bus. & Prof. Code § 17200, Plaintiff and California Subclass members seek an order enjoining Defendant's unfair and/or deceptive acts or practices, any such orders or judgments as may be necessary to restore to Plaintiff and California Subclass members any money acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203, and any other just and proper relief available under the California UCL.

**CLASS ACTION COMPLAINT**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated members of the Classes, prays for relief and judgment, including entry of an order:

1.     Declaring that this action is properly maintained as a class action, certifying the proposed Class(es), appointing Plaintiff as Class Representative and appointing Plaintiff's counsel as Class Counsel;

2.     Directing that Defendant bear the costs of any notice sent to the Class(es);

3.     Declaring that Defendant must disgorge, for the benefit of the Class(es), all or part of the ill-gotten profits they received from the sale of the Products, or order Defendant to make full restitution to Plaintiff and the members of the Class(es) except that no monetary relief is presently sought for violations of the Consumers Legal Remedies Act;

4.     Awarding restitution and other appropriate equitable relief;

5.     Granting an injunction against Defendant to enjoin it from conducting its business through the unlawful, unfair and fraudulent acts or practices set forth herein;

6.     Granting an Order requiring Defendant to fully and appropriately recall the Products and/or to remove the claims on its website and elsewhere, including "lead-free and nickel-free" Representations regarding the Products;

7.     Ordering a jury trial and damages according to proof;

8.     Awarding Plaintiff and members of the Class(es) statutory damages, as provided by the applicable state consumer protection statutes invoked above, except that no monetary relief is presently sought for violations of the Consumers Legal Remedies Act;

9.     Enjoining Defendant from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

10.     Awarding attorneys' fees and litigation costs to Plaintiff and members of the Class(es);

11.     Awarding civil penalties, prejudgment interest and punitive damages as permitted by law; and

12.     Ordering such other and further relief as the Court deems just and proper.

**CLASS ACTION COMPLAINT**

1

## **JURY DEMAND**

2

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

3

Dated: June 2, 2022                    Respectfully submitted,

4

Jonathan Shub (SBN 237708)
E-mail: jshub@shublawyers.com

5

Kevin Laukaitis*
E-mail: klaukaitis@shublawyers.com

6

**SHUB LAW FIRM LLC**
134 Kings Highway E, 2nd Floor

7

Haddonfield, NJ 08033
Telephone: 856-772-7200

8

Facsimile: 856-210-9088

9

Gary E. Mason*
E-mail: gmason@masonllp.com

10

Danielle Perry (SBN 292120)
E-mail: dperry@masonllp.com

11

Lisa White*
E-mail: lwhite@masonllp.com

12

**MASON LLP**
5101 Wisconsin Avenue NW, Suite 305

13

Washington, DC 20016
Telephone: 202-640-1168

14

Facsimile: 202-429-2294

15

/s/ S. Martin Keleti

16

S. Martin Keleti
s.martin.keleti@gmail.com

17

**KELETI LAW**
9903 Santa Monica Boulevard, Suite 751

18

Beverly Hills, CA 90212-1671
Telephone: 323-308-8489

19

*Pro Hac Vice* Application Forthcoming

20

*Attorneys for Plaintiff and Putative Class Members*

21

22

23

24

25

26

27

28

23

**CLASS ACTION COMPLAINT**